**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 16-CR-118-JHP |
| CHRISTOPHER COLMAN CHAMBERS, | ) ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

On November 22, 2016, United States Magistrate Judge Frank H. McCarthy entered a Report and Recommendation ("R&R") in regard to Defendant's Motion to Suppress Evidence (Doc. No. 15). (Doc. No. 22). The Magistrate Judge recommended that Defendant's Motion to Suppress Evidence be granted. Plaintiff the United States of America has filed an Objection to the Magistrate Judge's R&R pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b)(2). (Doc. No. 23). On December 6, 2016, the Defendant filed a Response. (Doc. No. 24).

In its Objection to the Magistrate Judge's R&R, Plaintiff asserts the Magistrate Judge erred in concluding the affidavit in support of the subject warrant did not provide a sufficient nexus between Defendant's property and the criminal activity alleged to have been committed by Kevin Chambers and Charity Drozd. Upon *de novo* review, this Court finds the Report and Recommendation of the Magistrate Judge is not supported by the record. Accordingly, the Court **REJECTS** the Report and Recommendation and **DENIES** Defendant's Motion to Suppress.

## BACKGROUND

On August 6, 2016, Rogers County Deputy Quint Tucker prepared an Affidavit seeking a search warrant for defendant's residence at 11470 S. 4210 Rd in the Foyil area of Rogers County, Oklahoma, in the Northern District of Oklahoma (the "Affidvait"). (*See* Doc. Nos. 23-1, 23-2, 23-3). The Affidavit contained a specific description of the property to be searched, 11470 S. 4210 Rd in the Foyil area of Rogers County (the "Residence"), specific directions to get to the Residence, and an aerial photo of the property to be searched. (*See* Doc. No. 23-1, at 1-2; Doc. Nos. 23-2, 23-3).

The following description of and directions to the property to be searched followed the aerial photo:

> **Description of property to be searched:** The property to be searched has two residences on it that all occupants on the property frequent. The main residence on the property is a single family residence. The door to this residence faces to the east towards S. 4210 Rd. The second residence is a metal structured shop with living quarters. The door to this residence faces south and is located directly south east of the main residence. The residences are both located on the same property at the dead end of S. 4210 Rd.
>
> **Directions to property to be searched:** From the intersection of E. 390 Rd and S. 4210 Rd in the Foyil area of Rogers County travel south on S. 4210 Rd. The road will dead end into the driveway identified as 11470 S. 4210 Rd on the Google mapping system.

(Doc. No. 23-1, at 2).

The Affidavit details Deputy Tucker's extensive training and experience in investigating drug cases, as well as the common practices of unlawful drug users/distributors/traffickers of controlled dangerous substances of which Deputy Tucker was aware. (*Id.* at 3-6).

The Affidavit then sets forth the following facts:

1. Investigators monitored conversations among Kevin Chambers, Charity Drozd, and a confidential informant on August 1, 2016, in which Drozd told the informant that she and Kevin Chambers "re-upped" in Tulsa and were on their way back; that they had several stops to make to individuals who had purchased product; and it would be late before they could deliver any methamphetamine to the informant. (*Id.* at 6).

2. On August 2, 2016, investigators monitored text messages and phone calls among Kevin Chambers, Drozd, and the informant, in which Kevin Chambers and Drozd stated they just woke up and would head straight to the informant from their residence. (*Id.* at 7).

3. On August 2, 2016, investigators monitored text messages and phone calls among Drozd, Kevin Chambers, and the informant to make arrangements to bring methamphetamine to the informant, after which Drozd and Kevin Chambers arrived at the informant's location and distributed methamphetamine to the informant. (*Id.*).

4. During the August 2, 2016, transaction, Drozd and Kevin Chambers bragged to the informant how much methamphetamine they had and were moving. Kevin Chambers told the informant he had a large amount the night before and had run from police in the Verdigris area of Rogers County. After Drozd and Kevin Chambers left, investigators retrieved the methamphetamine from the informant. (*Id.*).

5. Kevin Chambers bragged to the informant about being awoken by a deputy in July 2016 asleep in a bank drive-through. The informant stated that Kevin Chambers boasted about having seven eight-balls of methamphetamine on his person at the time of contact. Kevin Chambers stated the deputy woke him up and told him to move on, which Chambers found funny because the deputy had no idea about the methamphetamine. Investigators confirmed that this encounter did occur between a Rogers County deputy and Kevin Chambers from an activity log kept by Rogers County dispatch. (*Id.*).

The Affidavit further provides the basis for the informant's reliability and states that all knowledge shared by the informant proved to be true and correct and based on firsthand knowledge. (*Id.* at 7-8).

Regarding the residence to be searched, the Affidavit provides as follows:

### Residence Identified

[The informant] was able to give directions to the residence he knew Kevin and Charity to live. Investigators were able to confirm the address to belong to Kevin's brother Christopher Chambers from previous encounters with law enforcement. The address is known as .

(*Id.* at 8) (omission in original). Deputy Tucker further states that through his training and experience, he has learned that individuals involved in narcotics violations over an extended period of time tend to be habitual offenders. (*Id.*). Based on information provided by the informant, along with Drozd's and Kevin Chambers' criminal history, Drozd and Kevin Chambers were

3

indicated to be career criminals involved in the possession of narcotics.  (*Id.*).  Deputy Tucker further states he has learned that offenders such as Drozd and Kevin Chambers will store items, such as those sought in the warrant, at their residence, and it is the opinion of Deputy Tucker and other Rogers County Sheriff's Office investigators that the items sought in the warrant would be located at the place to be searched.  (*Id.*).  Deputy Tucker also states he has learned that offenders such as Drozd and Kevin Chambers will store evidence, such as that sought in the Affidavit, throughout their property.  (*Id.*).  Deputy Tucker further states that, based on the observations of vehicles and other items concealed from view, it is Deputy Tucker's opinion that the items sought in the Affidavit would be throughout the property, which is why he is "seeking authorization to conduct the search on the entire parcel described herein."  (*Id.*).

## DISCUSSION

This Court's review of the Magistrate Judge's decision is *de novo* when, as here, a party makes timely objections to the R&R.  Fed. R. Crim. P. 59(b)(3); *Bueno v. Pyle*, 24 F. App'x 917, 918 (10th Cir. 2001) (citing *Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir. 1996)).  The Court's review is limited to the "four corners" of the Affidavit itself, and the Court must determine whether the facts stated in the Affidavit establish probable cause to believe the particular address to be searched was linked to Kevin Chambers and Charity Drozd.  *See Hackney, Inc. v. McLaughlin,* 895 F.2d 1298, 1299-1300 (10th Cir. 1990).

The Magistrate Judge found that, because the Affidavit omits the address from the last line of the "Residence Identified" section of the Affidavit, it "does not tie the address contained in the search warrant or any particular address, to Kevin Chambers or Charity Drozd or to any suspected criminal activity.  Nor does the affidavit specify where Kevin Chambers and Charity Drozd reside."  (R&R at 2).  The Magistrate Judge therefore concluded that "the warrant is not supported

4

by probable cause to believe that evidence of a crime would be found at the particular address specified in the warrant." (*Id.*).

The Magistrate Judge also found that the good-faith exception did not apply, because the Affidavit was "so lacking in indicia of probable cause that official belief that probable cause exists [was] unreasonable." (*Id.* at 3). In so finding, the Magistrate Judge employed an objective standard that asks "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate authorization." (*Id.* (quoting *United States v. Gonzales*, 399 F.3d 1225, 1230 (10th Cir. 2005)) (quotation marks omitted)); *see United States v. Leon*, 468 U.S. 897, 922 n.23 (1984). Under this standard, the Magistrate Judge noted, "when the underlying affidavit is devoid of factual support, the good faith exception is not available." (R&R at 3 (citing *Gonzales*, 399 F.3d at 1230)). Because "there is nothing in the affidavit that states where Kevin Chambers and Charity Drozd reside or that the particular address in the warrant is connected with suspected criminal activity," the Magistrate Judge concluded the good faith exception could not apply and suppression was required. (*Id.* at 3-4).

On *de novo* review, this Court must consider whether there was sufficient probable cause to establish a nexus between the property to be searched and the criminal activity described in the Affidavit. The Tenth Circuit's "test for determining the adequacy of the description of the location to be searched is whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *United States v. Lora-Solano*, 330 F.3d 1288, 1293 (10th Cir. 2003) (quotation omitted). The Fourth Amendment's particularity requirement for warrants is governed by the concept of "practical accuracy rather than technical precision," and a "technically wrong address does not invalidate a warrant if it otherwise describes the premises

5

with sufficient particularity so that the police can ascertain and identify the place to be searched." *United States v. Brakeman*, 475 F.3d 1206, 1211 (10th Cir. 2007) (quoting *Lora-Solano*, 330 F.3d at 1293) (brackets and quotation marks omitted).

After a thorough review, the Court finds the Affidavit contains the following statements that, when taken together, provide a sufficient nexus between Defendant's property and the criminal activity alleged to have been committed by Kevin Chambers and Charity Drozd:

1. The Affidavit sets forth the address to be searched: 11470 S. 4210 Rd. near Foyil in Rogers County, a specific description of the property, directions to the property and includes an aerial photo showing the property and the residence to be searched. (Doc. No. 23-1, at 1-2).

2. On August 1, 2016, Drozd told an informant that she and Kevin Chambers re-upped in Tulsa and were on their way back; that they had several stops to make to individuals who had purchased product; and that it would be late before they could deliver any methamphetamine to the informant. (*Id.* at 6).

3. On August 2, 2016, the informant purchased methamphetamine from Kevin Chambers and Charity Drozd in a controlled buy monitored by law enforcement. (*Id.*).

4. On August 2, 2016, investigators monitored text messages and phone calls made among Kevin Chambers, Charity Drozd, and an informant, in which Kevin Chambers and Charity Drozd stated they just woke up and would head straight to the informant from their residence. (*Id.* at 6-7).

5. An informant gave directions to the residence he knew Kevin Chambers and Charity Drozd to live. Investigators confirmed the address to belong to Kevin Chambers' brother, Christopher Chambers, from previous encounters with law enforcement. (*Id.* at 8).

6. Deputy Tucker states, "offenders such as Kevin Chambers and Charity Drozd will store evidence, *such as that sought in this affidavit*, throughout their property," and "[b]ased on the observations of vehicles and other items concealed from view, it is my opinion that the items sought in this affidavit will be throughout the property, which is why I am seeking authorization to conduct the search *on the entire parcel described herein*." (*Id.* at 8) (emphasis added).

It is undisputed that Deputy Tucker inadvertently omitted the address of "the residence [the informant] knew Kevin and Charity to live" from the "Residence Identified" paragraph on page 8 of the Affidavit. Accordingly, the Court finds Deputy Tucker's omission of the address from that paragraph is merely a scrivener's error. The address to be searched, and its connection to Drozd

6

and Kevin Chambers, are apparent from a full reading of the Affidavit. *See United States v. De La Torre*, 543 F. App'x 827, 829 (10th Cir. 2013) ("Even if a warrant is facially invalid, the reviewing court 'must also review the text of the warrant and the circumstances of the search to ascertain whether the agents might have reasonably presumed it to be valid.'") (quoting *United States v. Leary*, 846 F.2d 592, 607 (10th Cir. 1988)).

Here, a full reading of the Affidavit leaves no doubt as to the address where the informant "knew Kevin and Charity to live":

    1.    The Affidavit states the informant gave directions to that residence to investigators, who confirmed the address belonged to Kevin Chambers' brother, Christopher Chambers. (Doc. No. 23-1, at 8).

    2.    The Affidavit lists the address of the property to be searched, contains a specific description of the property, directions to the property, and an aerial photograph of the property and the residence to be searched. (*Id.* at 1-2).

    3.    The affiant, Deputy Tucker, states that he had learned that "offenders such as Kevin Chambers and Charity Drozd will store evidence, such as that sought in this affidavit, throughout their property." (*Id.* at 8).

    4.    Based on his observations, Deputy Tucker opines "that the items sought in this affidavit will be throughout the property, which is why I am seeking authorization to conduct the search *on the entire parcel described herein.*" (*Id.*) (emphasis added).

The only "parcel described herein" is the address set forth on the first page of the Affidavit: "11470 S. 4210 Rd. in the Foyil area of Rogers County." Accordingly, Deputy Tucker's inadvertent omission of the address from the "Residence Identified" paragraph on page 8 left no possibility that another property could have been searched.

Because a full reading of the Affidavit leaves no doubt that Kevin Chambers and Charity Drozd lived at the parcel identified and described with particularity on pages 1-2 of the Affidavit, the Court finds the Affidavit provides a sufficient nexus between the criminal activity described and the location to be searched.

Moreover, even if the inadvertent omission of the address on page 8 of the Affidavit did, in fact, render the warrant invalid, the good-faith exception under *Leon* would apply, because the Affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. "When police officers act in good faith and reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause." *Lora-Solano*, 330 F.3d at 1294-95 (quoting *United States v. Price,* 265 F.3d 1097, 1102 (10th Cir. 2001)) (brackets and quotation marks omitted). Here, a reasonably well trained officer would not have known the search based on the Affidavit was illegal despite the magistrate's authorization because, for the reasons explained above, the connection between the suspected criminal activity and Christopher Chambers' residence can be inferred from a full reading of the Affidavit. *See Leon*, 468 U.S. at 922 n.23 ("our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."). Here, Plaintiff has established the executing officer's reliance was objectively reasonable, because the Affidavit establishes at least "a minimally sufficient nexus between the illegal activity and the place to be searched." *United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005) (quotation omitted).

Defendant attempts to analogize this case to the situation in *Gonzales*, in which the Tenth Circuit found the good-faith exception did not apply where a search warrant affidavit listed an address, but failed to specify that the address was the defendant's residence or that there was any other connection between that location, the defendant, or the suspected criminal activity. *Gonzales*, 399 F.3d at 1228, 1230. The analogy is inapt. In *Gonzales*, the only facts before the magistrate were the physical description of the address, that the defendant was a convicted felon,

8

and that a Glock 10mm magazine was found in a vehicle in which he was the only occupant. *Id.* at 1230. The only attempt at a connection was the detective's assertion that in his experience, firearms are often kept at the residence. *Id.*

In this case, by contrast, a full and natural reading of the Affidavit indicates the home and property described in the "Residence Identified" and "Probable Cause" sections on page 8 are the same as the home described in significant detail and pictured on pages 1-2 of the Affidavit. This case is rather more analogous to *United States v. Beck*, 139 F. App'x 950, 957-58 (10th Cir. 2005). In *Beck*, the Tenth Circuit affirmed an application of the good-faith exception, finding the underlying documents were not "devoid of factual support" where the Affidavit described a vehicle in the "Property to be Searched" section and described criminal activity that took place in a vehicle in the "Probable Cause" section. *Id.* The Court concluded that, "[a]lthough it does not say so explicitly, the natural reading of the affidavit indicates that the vehicle identified in the probable cause section is the vehicle involved in the criminal offense." *Id.* at 957. Therefore, the panel found that, [a]lthough the affidavit is weak, it establishes a minimally sufficient nexus between the illegal activity and the place to be searched" and affirmed the district court's application of the good-faith exception. *Id.* (quoting *Gonzales*, 399 F.3d at 1230) (quotation marks omitted). *See also De La Torre*, 543 F. App'x at 830 (finding warrant incorporating language allowing seizure of evidence related to any conceivable drug crime, but authorizing in preamble section the seizure of evidence of only one crime—possession and consumption of methamphetamine—was not subject to suppression, because a "reasonable officer could conclude that the authorized search, though purporting to extend to an exhaustive array of items, was limited to the only offense described.").

Here, as explained above, the Affidavit contained more than a minimally sufficient nexus between the illegal activity and the place to be searched. In light of the details present in the Affidavit, and the investigators' knowledge of where Kevin Chambers and Charity Drozd lived, the inadvertent omission of the address from the last line of the "Residence Identified" section of the Affidavit did not render unreasonable the officers' good-faith reliance on the issuance of the search warrant by a neutral magistrate.

## CONCLUSION

Upon full consideration of the entire record and the issues presented herein, the Court orders that the Report and Recommendation entered by the United States Magistrate Judge on November 22, 2016, be **REJECTED** and Defendant's Motion to Suppress Evidence (Doc. No. 15) be **DENIED**.

**IT IS SO ORDERED** this 23rd day of December, 2016

_____
James H. Payne
United States District Judge
Northern District of Oklahoma